UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| CARLA LEWIS TOLEDO a/k/a | * | CHAPTER 7 |
| CARLA VERSHUN LEWIS, | * | |
| Debtor | * | |
| | * | Case No. 1-04-00830 |
| ADNAN PEHLIVAN, | * | |
| Movant | * | |
| v. | * | |
| CARLA LEWIS TOLEDO a/k/a | * | |
| CARLA VERSHUN LEWIS, | * | |
| Respondent | * | |


FILED HARRISBURG PA
AUG - 6 2004
Clerk, U.S. Bankruptcy Court

## OPINION

### Factual Findings and Procedural History

On May 22, 2003, Adnan Pehlivan ("Movant") transferred a 1997 Plymouth Grand Voyager to Debtor in exchange for her promise that she would pay him the sum of $5,500.00 over a period of time. On that same date, the parties signed an "Installment Promissory Note" ("the Note") that called for payments of $250.00 per month for twenty-two months without interest. The Note contained the following statement: "This note is secured by a (sic) When (sic) amount, $5500.00 is paid in full, title to (sic) 1997 Plymouth Grand Voyager will be signed over to Carla Toledo., (sic) dated May 22, 2003."

Debtor made three payments of $250.00; one in June, July and August, 2003, respectively. She made no other payments. On January 6, 2004, Movant recorded a

1

judgment against her in the amount of $5,662.40 in state court based on her failure to make payments in accordance with the Note. On February 13, 2004, Debtor filed her bankruptcy petition. She listed Movant on her Schedule "D" - "Creditors Holding Secured Claims." On March 9, 2004, Debtor filed a Motion to avoid the judicial lien that had been created against the Voyager by the state court judgment. Movant, appearing pro se, filed an objection to this Motion on the basis that the avoidance would be inequitable under the circumstances and would create a financial hardship for his family. The parties appeared for a hearing on the Motion on March 3, 2004, at which time the Court continued the matter until pro bono counsel could be appointed for Movant.

On May 13, 2004, a Motion was filed on Movant's behalf for relief from the automatic stay to allow him to pursue his state remedies against the vehicle. The basis for the Motion was Debtor's defaults on payments under the Note. Debtor's Answer to the Motion averred that Movant could not obtain relief from the stay because the Note did not create a security agreement.

A hearing was held on June 15, 2004. Briefs have been filed by the parties and the matter is ready for decision.[1]

---

[1] I have jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(G). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

2

## Discussion

The parties agree that the issue to be decided is whether the Note created a security interest. If it did, then Movant will be entitled to relief from the stay because of Debtor's defaults in payment both pre- and post- petition. The burden of proving that an item of property is subject to a security interest is on the party asserting the interest. *In re Engle*, 73 B.R. 870, *rev'd on other grnds,* 93 B.R. 58 (Bankr. E.D. Pa. 1987).

Under Pennsylvania law "[t]he term 'security interest' is defined as an interest in personal property or fixtures which secures payment or performance of an obligation." *Reuter v. Citizens & Northern Bank,* 410 Pa. Super. 199, 205, 599 A.2d 673, 676 (1991). In relevant part, the Uniform Commercial Code ("UCC"), codified in Pennsylvania at 13 Pa.C.S.A. §1101 *et seq.,* states that a security interest is enforceable against the debtor with respect to the collateral only if all of the following apply: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has signed "a security agreement which provides a description of the collateral." 13 Pa. C.S.A. §9203(b). *See also Reuter,* 599 A.2d at 676; *Tressler v. Baker*, 771 F.2d 791 (3d. Cir. 1985). Pennsylvania law defines a "security agreement" as "an agreement which creates or provides for a security interest." 13 Pa.C.S.A. §9102.

Perhaps recognizing that many transactions that are intended to grant security interests are executed by unsophisticated private parties, courts are liberal in deciding whether a writing might constitute a security agreement under Sections 9102 and 9203(b). "There is no precise form which must be utilized to evidence a security interest." *In re*

3

*Scheidmantel Olds-Cadillac, Inc.*, 144 B.R. 296, 298 (Bankr. W.D. Pa. 1992). "A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it." *Matter of Bollinger Corp.*, 614 F.2d 924, 927 (3rd Cir. 1980), (citing, *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973)). *See also In re Hance,* 181 B.R. 184 (Bankr. M.D. Pa. 1993).

In keeping with the *Bollinger* Court's focus on whether a security interest was "agreed upon," "[t]he principal test in determining whether a transaction is a secured sale ... is the intent of the parties that the transaction have effect as a secured sale." *In re Chisholm,* 54 B.R. 52, 53 (Bankr. M.D. Fla. 1995) (*citing Bruce Lincoln-Mercury, inc. v. Universal CIT Credit Corp.* 325 F.2d 2 (3rd Cir. 1963)). *See also Bonszek v. Pascoe Equipment Co.,* 304 Pa. Super. 11, 19, 450 A.2d 75, 79 (1982). It is noteworthy that these cases do not require that the intent of the parties be made manifest within the four corners of the document asserted to be the security agreement. *See Bonczek*, 450 A. 2d at 79 (court accepts testimony of purchaser regarding intent of alleged lease agreement); *In re Amex-Protein Development Corp.*, 504 F.2d 1056, 1060 (9th Cir. 1974) ("there is no requirement that the description of the collateral be complete within the four corners of the security agreement or other single document"); *see generally, West Conshohocken Restaurant Associates, Inc. v. Flanigan,* 737 A.2d 1245, 1248 (Pa.Super. 1999) (if terms of contract are ambiguous, parol evidence may be introduced to aid interpretation of agreement).

4

AO 72A
(Rev. 8/82)

The instant case involved a private transaction between two unrepresented parties who were not in the business of buying and selling cars. Both seller and buyer were unaware of the provisions of the UCC. They attempted to create appropriate sales documents from a sample form or forms, but the resulting agreement, constructed with unfamiliar tools, was flawed. Nonetheless, the Note clearly mentions the Voyager in the same sentence as the phrase "this note is secured by." Further, the document suggests that the seller is reserving an interest in the vehicle by purporting to withhold title until the Note is satisfied. Even in this ill-crafted sentence, there would have been no purpose in mentioning the Voyager if the parties had not intended for it to serve as security for the debt. *See In re Provident Hospital & Training Association,* 79 B.R. 374 (Bankr. N.D. Ill. 1987) ("the test under Article 9 of the UCC is one of reasonable identification, not use of terms of art.") Moreover, the Note was signed by the Debtor simultaneously with the sale itself. To hold that the Note did not create a security interest, the Court would have to find that the parties intended for some other property - or no property at all - to secure the transaction. Although the language is far from clear, the document taken as a whole and extrinsic evidence offered at the hearing strongly suggests that the reference to the Voyager is not mere surplusage, and that the transaction was intended to grant a security interest in the vehicle. As the Court in *Amex Protein* noted, "[t]he description in the security agreement is sufficient ... if it provides such information as would lead a reasonable inquirer to the identity of the collateral."

5

For these reasons, the Court will grant the Motion for relief from the stay. An order that enforces the decision rendered herein will follow.

BY THE COURT

MARY D. FRANCE
BANKRUPTCY JUDGE

HARRISBURG, PENNSYLVANIA

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| CARLA LEWIS TOLEDO a/k/a | *   CHAPTER 7 |
| CARLA VERSHUN LEWIS, | * |
| Debtor | * |
| | *   Case No. 1-04-00830 |
| ADNAN PEHLIVAN, | * |
| Movant | * |
| | * |
| v. | * |
| | * |
| CARLA LEWIS TOLEDO a/k/a | * |
| CARLA VERSHUN LEWIS, | * |
| Respondent | * |

## ORDER

AND NOW, this 6th day of August, 2004, the Motion for relief from the stay filed by the Movant is hereby granted.

BY THE COURT

*/s/ Mary D. France*
MARY D. FRANCE
BANKRUPTCY JUDGE

HARRISBURG, PENNSYLVANIA